UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JUDAH DEVOREAUX,

        Plaintiff,

    -against-

SCHLESINGER ASSOCIATES, INC.,

        Defendant.
------------------------------------------------------------x

08 Civ. 0074

COMPLAINT /
DEMAND FOR JURY TRIAL

        Plaintiff Judah Devoreaux, by her attorneys Emery Celli Brinckerhoff & Abady LLP, for her Complaint alleges as follows:

## PRELIMINARY STATEMENT

    1.    Schlesinger Associate's midtown Manhattan office is a place where bald racial epithets are tolerated in the name of office morale and the company's own twisted sense of "esprit de cours." Prized employees are given wide latitude and those who dare complain about the racially charged atmosphere are ostracized and branded as thin-skinned loners.

    2.    Judah Devoreaux did not accept being called a nigger. She did not accept being told to listen to a senior staff member because he was higher "on the color food chain." But when she complained, Schlesinger isolated her and punished her for having the temerity to criticize a coworker. Defendant retaliated against her by cutting her hours, ignoring her requests to schedule her at times to avoid her tormentor, and showing her coworkers that the problem is with those who complain about racist remarks rather than those who use them. As a result, the toxic atmosphere of the office flourished to the extent that Ms. Devoreaux was forced to resign.

1

3. This action arises from Defendant's unlawful behavior and seeks redress for the harms caused by their abusive, degrading, and shameful conduct.

## THE PARTIES

4. Plaintiff Judah Devoreaux, also known as Joanna Jacobs, is a citizen of the United States and a resident of Manhattan.

5. On information and belief, Defendant Schlesinger Associates, Inc. ("Schlesinger") is a multi-national corporation that purports to provide data collection services to help companies understand the marketplace. On information and belief, Schlesinger is incorporated in New Jersey and has its head corporate offices at 10 Parsonage Road, Suite 400, Edison, New Jersey 08837. Schlesinger also operates an office at 500 Fifth Avenue, Suite 1030, New York, New York 10110.

## JURISDICTION AND VENUE

6. This action arises under 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and under the New York City Charter and Code § 8-107 ("New York City Human Rights Law").

7. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, 1367(a), and the doctrine of supplemental jurisdiction.

8. Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because events giving rise to Ms. Devoreaux's claims occurred in this district, and because defendants may be found here.

## JURY DEMAND

9. Plaintiff demands a trial by jury in this action.

## FACTUAL ALLEGATIONS

10. Judah Devoreaux began work at Schlesinger Associates' New York office in January 2006.

11. Schlesinger is an international market research firm and Ms. Devoreaux was hired to provide administrative services to focus groups who attended events at Schlesinger's offices.

12. On February 16, 2006 at approximately 2:30 p.m., Kelvin Classen, a coworker, approached Ms. Devoreaux and told her that, in sum and substance, because she was "lower on the color food chain," she would "have to answer to [him]." Ms. Devoreaux told Mr. Classen not to speak to her again, but later that day he approached her a second time and called her a "nigger."

13. In response to Mr. Classen's repeated verbal abuse, Ms. Devoreaux went directly and nearly immediately to her acting supervisor, Lori Mahl, to complain. Mahl told Ms. Devoreaux that she "should get used to it" as "Kelvin jokes like that with everyone." Not willing to just "get used to it," Ms. Devoreaux wrote a letter to Lisabeth Bloom, a Vice President, to complain further about her mistreatment. Ms. Devoreaux was assured the matter would be addressed.

14. Schlesinger's response was swift, and retaliatory. First, the company offered to re-locate Ms. Devoreaux to New Jersey and cut her pay nearly in half from $15 per hour to $9 per hour. When Ms. Devoreaux declined that "offer," the company reduced her schedule to part time in the New York office.

15. For his part, Classen wrote an undated and ambiguous apology stating both that "[a]nything I might have said was not meant to be offensive," and that he

"meant, and still mean[s], every word." Despite her requests to be scheduled in a manner to avoid Classen, Ms. Devoreaux was repeatedly forced to come into contact with him and she was shunned by her other coworkers.

16. On information and belief, other than a requirement that Classen send an ambiguous written apology, no other disciplinary action was taken against him.

17. Over a month later, Defendant remarked in a two-minute aside during a two hour meeting of New York staff that focused extensively on cleanliness and efficiency, that racist remarks would result in written warnings. The manager making the presentation simultaneously apologized for having to raise the issue at all and effectively conveyed that he had been forced to say it.

18. Classen was never given a written warning for his statements to Ms. Devoreaux.

19. Taking their cue directly from management, who had placed her on part-time for complaining, coworkers of Ms. Devoreaux characterized her as a tattletale and ostracized her.

20. On April 6, 2006, Ms. Devoreaux wrote a letter to Steve Schlesinger, the Chief Executive Officer of Schlesinger and complained about the incident again. She told him that she was extremely uncomfortable working at Schlesinger Associates and felt that the situation was not right.

21. The same day she wrote to Mr. Schlesinger, Ms. Devoreaux filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC").

22. Humiliated and emotionally shattered, on April 12, 2006, Ms. Devoreaux resigned.

4

23. As a result of the abusive and hostile work environment at the Manhattan office, Defendant's retaliation against her when she complained of her harassment, Defendant's refusal to provide her full time, and her constructive discharge, Ms. Devoreaux has suffered emotional and economic damages.

24. Ms. Devoreaux filed a claim with the New York State Division of Human Rights on April 17, 2006 and the EEOC.

25. A year later, on April 27, 2007, the N.Y.S. Human Rights Division, after conducting its own investigation, determined that "there is probable cause to believe that respondent [Schlesinger Associates] has engaged in or is engaging in the unlawful discriminatory practice [Ms. Devoreaux] complained of."

26. A hearing on Ms. Devoreaux's New York State law claims has now been schedule for January 9, 2008.

27. The EEOC issued a right to sue letter on November 26, 2007, which was received by Ms. Devoreaux's attorneys on November 29, 2007.

28. Ms. Devoreaux also applied for unemployment benefits. On June 8, 2006, the New York Department of Labor Unemployment Insurance Appeal Board – after hearing sworn testimony from both Ms. Devoreaux and Schlesinger Associates – determined "the credible evidence establishes that [Ms. Devoreaux] resigned because she continued to come into contact with a coworker who had made inappropriate racial comments towards her." The Board "rejected [Schlesinger's] contention that the comments were made as part of a discussion," and it held that Ms. Devoreaux had "good cause to refuse the transfer as she would have been compelled to accept a significant

reduction in pay." The Board concluded that "the comments made were so egregious as to constitute good cause to resign."

29. Ms. Devoreaux brings this suit to recover damages and attorneys fees relating to the prosecution of her claims.

## FIRST CLAIM FOR RELIEF
(42 U.S.C. § 2000e-3(a), Title VII)

30. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

31. While employed by Schlesinger, Ms. Devoreaux was an "employee" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(f).

32. At all times relevant to this complaint, Defendant Schlesinger was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

33. Title VII, 42 U.S.C. § 2000e-2(a) makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."

34. The anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to discriminate against an employee because that employee has "opposed any practice made an unlawful employment practice by this subchapter," or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

35. Schlesinger had a racially hostile work environment sufficiently severe and pervasive to alter the terms and conditions of Ms. Devoreaux's employment and create an abusive working environment, in violation of 42 U.S.C. § 2000e-2(a).

36. Schlesinger caused her discharge because of her race and her refusal to assent to or sanction the abusive and hostile atmosphere at the office and in retaliation for her complaints about the abuse.

37. When Ms. Devoreaux complained to Mahl, Bloom, Steve Schlesinger, and others, she "opposed any practice made an unlawful employment practice under [Title VII of the Civil Rights Act]," and "made a charge, testified, assisted, or participated . . . in an investigation, proceeding, or hearing under [Title VII of the Civil Rights Act]" within the meaning of 42 U.S.C. § 2000e-3(a).

38. By (i) requiring her to take a lower-paid job; (ii) forcing her to work on shifts that brought her into contact with Classen; (iii) forcing her to reduce her hours to part time; (iv) failing to protect her from further workplace harassment; and (v) forcing Devoreaux to leave her job at Schlesinger, Schlesinger retaliated against Devoreaux in violation of 42 U.S.C. § 2000e-3(a).

39. Defendant Schlesinger is liable for the hostile work environment based on its failure to protect plaintiff and its constructive discharge of her in retaliation for Ms. Devoreaux's complaints at Schlesinger because the hostile environment was created and fostered by management at Schlesinger and/or because Schlesinger did not take adequate steps to prevent or address instances of harassment after Devoreaux reported the racial harassment to supervisors.

40. Said discrimination and retaliation occurred with malice and reckless indifference of the Plaintiff's rights.

41. As a direct and proximate result of this discrimination and retaliation, Devoreaux suffered and continues to suffer actual damages, in forms including but not limited to lost income, lost future earnings and mental anguish, pain, and suffering.

## SECOND CLAIM FOR RELIEF
(N.Y. City Admin. Code § 8-107)

56. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

57. At all times relevant hereto, Defendant Schlesinger had at least four persons in its employ and therefore it and its agents and employees were required to comply with the Civil Rights Laws of the City of New York, including N.Y. City Admin. Code § 8-107.

58. N.Y. City Admin. Code § 8-107(1)(a) prohibits employers from discriminating against an employee because of race "in compensation or in terms, conditions or privileges of employment."

59. N.Y. City Admin. Code. § 8-107(7) prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has ... opposed any practice forbidden under this chapter."

62. The racially hostile work environment at the Manhattan Schlesinger office was sufficiently severe and pervasive to alter the terms and conditions of Devoreaux's employment and create an abusive working environment in violation of N.Y. City Admin. Code § 8-107(1).

63. The hostile work environment, threats and harassment based on Devoreaux's race was sufficiently severe and pervasive to alter the terms and conditions of Devoreaux's employment and create an abusive working environment in violation of

N.Y. City Admin. Code § 8-107(1). Moreover, Defendant's retaliation against Ms. Devoreaux for her repeated requests that she not be forced to work at certain times so that she might avoid the employee who accosted her with racial epithets was in violation of N.Y. City Admin. Code § 8-107(7).

64. When Ms. Devoreaux complained to Mahl, Bloom, Steve Schlesinger, and others, she "opposed . . . practice[s] forbidden under" N.Y. City Admin. Code § 8-107.

65. Defendant's retaliation against Ms. Devoreaux and constructive discharge of her was based on her race and her refusal to assent to or sanction the abusive and hostile atmosphere at the Manhattan office and in retaliation for her complaints about the abuse.

66. By (i) requiring her to take a lower-paid job; (ii) forcing her to work on shifts that brought her into contact with Classen; (iii) forcing her to reduce her hours to part time; (iv) failing to protect her from further workplace harassment; and (v) forcing Devoreaux to leave her job at Schlesinger, Schlesinger retaliated against Devoreaux in violation of N.Y. City Admin. Code § 8-107(7).

68. Said discrimination, failure to accommodate, and retaliation occurred with malice and reckless disregard of the Plaintiff's rights.

69. As a direct and proximate result of this discrimination, failure to accommodate, and retaliation against Devoreaux, she suffered and continues to suffer actual damages, in forms including but not limited to lost income, lost future earnings and mental anguish, pain, and suffering.

WHEREFORE, plaintiff respectfully requests judgment against Defendant as follows:

(A)    an order awarding compensatory damages in an amount to be determined at trial;

(B)    an order awarding punitive damages in an amount to be determined at trial;

(C)    reasonable attorneys' fees and costs under 42 U.S.C. § 1981a(a)(1), (b); § 2000e-5(k); N.Y.C. Admin. Code § 8-502; and

(D)    directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: January 4, 2008
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____
Mariann Meier Wang (MW 7417)
O. Andrew F. Wilson (OW 5062)
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

*Attorneys for Plaintiff*